In April 1992, Ramona Kay Colwell (the "worker") filed a complaint seeking workmen's compensation benefits and damages for an alleged retaliatory discharge against S D Griner, Inc., d/b/a Griner's Super Value (the "company"). The worker alleged that she suffered an injury in the line and scope of her employment and that the company terminated her employment because she made a claim for compensation benefits. The trial court, upon the company's motion, severed the workmen's compensation claim and the retaliatory discharge claim. The retaliatory discharge claim was tried before a jury, which awarded the worker $25,000 compensatory damages and $25,000 punitive damages. The company filed a motion for a new trial, or, in the alternative, a judgment notwithstanding the verdict (JNOV). The trial court denied the company's motion; the *Page 692 
company appealed. This case was transferred to this court by the Supreme Court pursuant to Ala. Code 1975, § 12-2-7.
The company argues that the trial court erred in (1) not entering a directed verdict for the company at the close of the evidence; (2) failing to ascertain the correctness of the jury verdict when polling the jury; (3) allowing the issue of punitive damages to be presented to the jury; (4) not admitting into evidence the worker's answers to interrogatories; (5) not allowing the company to lead a certain witness; (6) not allowing the company to admit into evidence the financial reasons for the store's closing; and (7) denying the JNOV.
A motion for a directed verdict or a JNOV is due to be granted when the nonmoving party has failed to present substantial evidence to support his or her position. Ala. Code 1975, § 12-21-12; John R. Cowley Bros., Inc. v. Brown,569 So.2d 375 (Ala. 1990). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989). This court applies the same standard as the trial court when reviewing the denial of a directed verdict or JNOV motion. John R. Cowley, supra.
An Alabama employment contract is terminable at will by either party, with cause or without cause, and for even no reason or a bad reason. Hoffman-La Roche, Inc. v. Campbell,512 So.2d 725 (Ala. 1987). Ala. Code 1975, § 25-5-11.1, provides an exception to the employee-at-will rule in the case of a dismissal based only on the fact that the employee has filed a workmen's compensation claim. Culbreth v. Woodham Plumbing Co.,599 So.2d 1120 (Ala. 1992). Our Supreme Court has interpreted §25-5-11.1 in this manner:
 "We hold that an employee may establish a prima facie case of retaliatory discharge by proving that he was 'terminated' because he sought to recover worker's compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the [employee] must prove that the reason [given by the employer] was not true but a pretext for an otherwise impermissible termination."
Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364, 1369
(Ala. 1988).
The company argues that the trial court erred in denying its motion for directed verdict and its motion for a JNOV. The company contends that after it presented evidence that the worker was terminated for permissible reasons, the worker failed to meet her burden of proving that the company's reason for terminating her was merely a pretext and that she was terminated because she filed a claim for workmen's compensation. We will view the facts in a light most favorable to the worker, the nonmoving party. Continental Eagle Corp. v.Mokrzycki, 611 So.2d 313 (Ala. 1992).
The facts are heavily disputed. The worker began working for the company on November 17, 1991, in the deli department. She testified that she was bitten by a spider on November 29, 1991, while cleaning a cake display, and that she immediately reported the injury to an assistant manager. She testified that she went to an emergency room the following day and then wore a splint on one arm, because of possible carpal tunnel syndrome, and continued to work December 3, 4, 5, and 6. Bruce Akers, a comanager of the store, testified that the worker first complained of being allergic to the industrial dishwashing liquid used for the deli utensils and then later stated that she had been bitten by a spider.
According to the worker, on December 10, she went to an orthopedic surgeon, Dr. Bacon, who ordered that both arms be placed in splints, because of carpal tunnel syndrome. The worker returned to work on December 11. She testified that Steven Griner, the president of the company, asked her why she was working in splints, and then asked her in an upset tone, "Do you realize, do you understand, that filing workmen's comp. would cause my rates to go up, would cause my insurance to go up?" Mr. Griner denies *Page 693 
referring to his insurance rates; however, another employee corroborated the worker's testimony. Mr. Griner then told her that he did not want her working there with a splint, and that he wanted her to continue seeing the doctor until he released her to return to work, and that she might be able then to return to her job.
The worker obtained a release to return to work from Dr. Bacon and gave it to Mr. Griner on December 12, and he told her that he would have to consider whether she could return to work. The company produced the document the worker gave him, which did not indicate a date that the worker could return to work, and the company asserted that, because of the absence of a date, it was not a valid release. The worker, her mother, and her sister all testified that they saw a "help wanted" sign for the deli a few days after Mr. Griner had sent the worker home. Mr. Griner and several other employees denied that a help wanted sign was ever at the store. The worker testified that she asked a comanager about the sign, and he told her that she could not come back to work because the store was reducing employee hours in the deli. On December 21, 1991, a new deli employee was hired; that employee was replaced on February 7, 1992. The worker repeatedly made inquiries about when she could return to work, and in January 1992 a comanager telephoned Mr. Griner, and then the comanager told the worker that she had been fired. Mr. Griner denies that he fired the worker, and he contends that she simply never returned to the store to seek her former position.
Viewing the evidence in the light most favorable to the worker, we conclude that the trial court properly denied the company's motion for a directed verdict and its motion for a JNOV. The worker presented substantial evidence that the company did in fact terminate her because she had filed a claim for workmen's compensation benefits. The company claims that the worker was never fired; however, the worker testified that the comanager told her that the company had fired her. The company also argues that the worker was not rehired, because of a business decision to reduce the number of employees in the deli. The worker refuted that contention with evidence that the deli had the same number of employees after she was injured and that she frequently asked to be rehired, and that instead of hiring her, the company posted a "help wanted" sign for the deli.
The company next argues that the trial court did not poll the jury correctly pursuant to Ala. Code 1975, § 12-16-15. Following a period of deliberation, the jury returned and stated that they were "hung." The parties then agreed to a majority verdict. Section 12-16-15 states:
 "When a verdict is entered in . . . a civil . . . case and before it is recorded, the jury may be polled, on the requirement of either party, in which case they must be asked severally if it is their verdict; and, if any answer in the negative, the jury must be sent out for further deliberation."
The company contends that the trial court erred in asking each juror only if the verdict was indeed a 10-to-2 verdict, and the company asserts that the trial court should have inquired of each juror as to his or her vote.
Section 12-16-15 requires the trial court to ask the jurors "severally if it is their verdict." The trial court asked each juror if the verdict was indeed a 10-to-2 verdict, and each juror responded that the verdict was 10-to-2. The trial court polled the jurors precisely as the statute directs; therefore, the trial court did not err in its method of polling the jury.
The company next argues that the trial court erred in submitting the issue of punitive damages to the jury. "Punitive damages may not be awarded . . . other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." Ala. Code 1975, § 6-11-20(a). The worker presented ample evidence that the company made conscious and deliberate efforts to mislead her about the availability of her former position. Furthermore, our Supreme Court has indicated that punitive damages are particularly appropriate in retaliatory discharge cases, because of *Page 694 
"the gravity of wrongfully depriving [the worker] of what was her livelihood, [and] . . . the chilling effect of retaliatory discharges." Lozier Corp. v. Gray, 624 So.2d 1034, 1037
(Ala. 1993). We conclude that the trial court properly submitted the issue of punitive damages to the jury.
The company's remaining issues, based on questions of evidence and examination of witnesses, are subject to the harmless error rule. Ala.R.App.P. 45. Therefore, we affirm the trial court's judgment.
AFFIRMED.
THIGPEN, YATES, and MONROE, JJ., concur.
ROBERTSON, P.J., concurs in the result.