Waldrip Wrecker Service, Inc., appeals from a judgment based on a jury verdict in favor of the plaintiff, Randy Allen Wallace, on his retaliatory-discharge claim filed pursuant to §25-5-11.1, Ala. Code 1975.
The record indicates the following facts: Wallace began working for Waldrip as a mechanic in early February 1997. On or about February 15, 1997, Wallace injured his arm while he was working on a transmission. The next morning, Wallace informed Johnny Finkley, the general manager for Waldrip, of his injury. Wallace told Finkley that he would soak his arm and put ice on it; however, the pain worsened and Wallace told Jerry Todd, fleet supervisor for Waldrip, that he needed to see a doctor. On March 11, 1997, Wallace filled out an accident report for the purpose of seeing a doctor and to draw workers' compensation benefits.[1]
Dr. Kirven Ulmer treated Wallace's arm and Wallace continued to work. When the arm did not improve, Dr. Ulmer referred Wallace to Dr. Michael Freeman. Dr. Freeman told Wallace not to use the arm. As a result, Wallace did not work from April 5, 1997, to April 23, 1997. Todd told Wallace that his job would be there when he was able to return to work.
While Wallace was out, Waldrip had to "outservice" its mechanic work. George Hutchinson, president of Waldrip, testified that he was upset at having to pay workers' compensation to Wallace while having to pay another mechanic:
 "We were paying that money out, and, of course, while he was on workers' comp he was being paid by workers' comp. And, of course, when he would come back, we would put him back on the payroll. It was like double dipping. It was like we were paying twice for the efforts of one."
Hutchinson knew that Wallace had been injured on the job and that he had been treated by Dr. Freeman. He also was aware that Dr. Freeman had released Wallace to return to work as of April 23, 1997. Hutchinson, who is a lawyer, admitted that he knew it was illegal to discharge a worker solely because he had filed a workers' compensation claim.
Todd testified that he and Hutchinson had discussed eliminating Wallace's position before Wallace returned to work. Wallace returned to work on April 24, 1997. That same day, Todd told Wallace that Waldrip was terminating his position because, he said, Waldrip no longer needed a mechanic.
On April 29, 1997, Wallace received a letter from Hutchinson, which stated:
 "As you know, the need for the position of mechanic at Waldrip Wrecker Service is no longer valid and cannot be supported by the amount of work available. Therefore, based upon what little time you actually spent working on our vehicles, we determined that the position of mechanic must be eliminated.
 "According to our records, you were released by Dr. Michael Freeman, M.D. to `return to work 4-23-97 to normal duty.' . . . It is our understanding and the information that we relied on, that *Page 1112 
 you were capable of performing normal duties, which you did on 4-24-97. As a matter of fact, you put in a full eight-hour work day without complaint or reservation on said day. You performed your duties on that day and we appreciate all of your efforts rendered in behalf of Waldrip Wrecker Service.
 "As stated above, due to the lack of work and need for a mechanic, we have abolished your position."
In May 1997, Waldrip placed an advertisement in the newspaper for a mechanic's position. Todd testified that Waldrip placed the ad because Waldrip needed a full-time mechanic.
Although Todd testified that Wallace was a good mechanic, Waldrip did not ask Wallace to return to work full-time. Instead, Waldrip hired another mechanic, even though Wallace had better qualifications for the job than the person Waldrip employed. In January 1998, Waldrip again hired a full-time mechanic, but did not ask Wallace to come back to work.
At trial, Todd testified that Wallace had created an unreasonable hazard that had led to his injury and that Wallace had claimed overtime work that had not been approved by his supervisor. However, Todd admitted that when he was deposed, he never said that Wallace had worked unauthorized overtime or that Wallace had performed his job in an unsafe manner.
Further, Todd testified that Wallace had done his job and was a good worker. Todd also stated that there was a lack of work to justify keeping Wallace as a full-time mechanic.
Wallace testified that he had been told by Todd and Finkley that if a truck broke down, he was to fix it "no matter what." He stated that when he did overtime work, it was when a truck had broken down. Wallace said that he had been told to stay until he completed the repairs, because if the trucks were out of service Waldrip was not making money. He stated that he was called in at night on occasion to repair trucks. Todd admitted that Wallace had been called in at night on occasion.
Waldrip's own counsel elicited testimony from Todd concerning other Waldrip employees who had filed workers' compensation claims. Todd testified that truck driver Michael Snisky was injured on March 18, 1997, and filed a workers' compensation claim. Todd admitted that Waldrip's own records indicated that Snisky had been fired in May 1997. Todd contended at trial that Snisky had been merely "suspended" for insubordination. However, Todd's earlier deposition testimony indicated that Snisky had been terminated, but that he had not had any problems with Snisky.
Wallace testified at trial that at Waldrip he had earned on average $454 per week, at $9 per hour plus overtime. He stated that after he had been fired by Waldrip, he was out of work for six and one-half weeks before finding a new job, and that the new job paid $6.50 per hour. Wallace testified that the termination had embarrassed him and that he had suffered emotionally as a result of the firing.
Waldrip moved for a preverdict JML, arguing that Wallace had "failed to present substantial evidence that he was terminated solely because he filed a workers' compensation claim;" that he had "failed to present substantial evidence that he has suffered any compensable damages;" and that he had "failed to present substantial evidence that [Waldrip's] reasons given for terminating him were a pretext." At the trial, in support of its motion, Waldrip argued:
 "Of course, at this point the evidentiary requirement is substantial evidence in order to go to the jury, first argument being the law requires that Mr. Wallace provide substantial evidence that the sole reason for his termination was the workers' compensation claim. Mr. Wallace himself has already testified that he has no evidence to support that claim. He personally has no evidence to support that claim and has agreed that that *Page 1113 
 claim is really speculative. He has also failed to present substantial evidence that the reasons given for terminating him were a pretext. There is absolutely no evidence. He hasn't produced any evidence that the reasons for terminating him were a pretext, that the reasons given were a pretext. And I don't think, Judge, that he has offered any evidence to support any claim for damages as a result. There is not even evidence in this case that a workers' compensation claim has been filed. That's it, Judge."
The trial court denied the motion, and the case went to the jury. The jury found in Wallace's favor, awarding him $5,000 in compensatory damages and $15,000 in punitive damages.
Waldrip moved for a postverdict JML or for a new trial, again arguing that Wallace had failed to present substantial evidence indicating that he was terminated solely because he filed a workers' compensation claim. After the court had entered a judgment based on the verdict, Waldrip moved to alter, amend, or vacate the judgment, arguing:
 "That the award of punitive damages is constitutionally flawed in that the award was based upon bias, passion and prejudice.
 "That the award of punitive damages is constitutionally flawed in that it is excessive and exceeds the amount necessary to accomplish society's goal of punishment and deterrence.
 "Wherefore, the premises considered, the Defendant respectfully requests this Honorable Court to enter an Order vacating the punitive damages award against the Defendant or, in the alternative, to enter an Order altering and/or amending the punitive damages award to a lesser amount that is not excessive and not constitutionally erroneous."
Waldrip did not request a hearing pursuant to Hammond v.City of Gadsden, 493 So.2d 1374 (Ala. 1986), nor did it present any evidence in support of its posttrial motions. The motions were denied by operation of law, pursuant to Rule 59.1, Ala.R.Civ.P. Waldrip appealed.
Waldrip argues that the trial court erred in denying its preverdict JML, because, it says, Wallace failed to prove that he had sought workers' compensation benefits. Waldrip also argues that Wallace failed to present any evidence indicating that his discharge was in retaliation for his filing a workers' compensation claim. We disagree.
The standard of review for a motion for a JML, under the current version of Rule 50, Ala.R.Civ.P., is the same as the standard for review of a motion for a directed verdict and a motion for a JNOV under Rule 50 as it read before the October 1, 1995, amendment.[2] See Montgomery Coca-Cola Bottling Co.,Ltd. v. Golson, 725 So.2d 996 (Ala.Civ.App. 1998).
Our supreme court has stated:
 "When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala. 1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala. 1992). For actions filed after June 11, 1987, the nonmovant must present `substantial evidence' in order to withstand a motion for a JML. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has *Page 1114 
 produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Motion Industries [, Inc.] v. Pate, 678 So.2d 724 (Ala. 1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas Co., 599 So.2d 1126 (Ala. 1992).
Delchamps, Inc. v. Bryant, 738 So.2d 824, 830 (Ala. 1999).
Waldrip's contention that Wallace did not present substantial evidence indicating that he had sought workers' compensation benefits is without merit. Wallace was injured while working and the next morning he notified his supervisor of the injury. Wallace tried to let his arm heal on its own. When his arm did not get better, he informed the fleet supervisor that he needed to see a doctor. Wallace completed a workers' compensation accident report, for the purpose of drawing workers' compensation benefits and seeing a doctor; the report was admitted into evidence. Wallace was off work for approximately three weeks, during which time Waldrip paid him workers' compensation benefits, as testified to by Hutchinson.
Waldrip's argument that Wallace failed to present evidence of a retaliatory discharge is also without merit. To prove a retaliatory discharge, the employee must show that he was terminated because he sought to recover workers' compensation benefits; this would be an impermissible reason, under §25-5-11.1. The burden would then shift to the employer "to come forward with evidence that the employee was terminated for a legitimate reason." Twilley v. Daubert Coated Products, Inc.,536 So.2d 1364, 1369 (Ala. 1988). Thereafter, the employee must prove that the reason given by the employer was a pretext for an otherwise impermissible termination. Twilley, supra.
In Culbreth v. Woodham Plumbing Co., 599 So.2d 1120,1122 (Ala. 1992), our supreme court stated:
 "[I]t would be more appropriate to say that, after the defendant has met his burden of coming forward with evidence of a legitimate reason, `"[t]he plaintiff then has the burden of going forward with rebuttal evidence showing that the defendant's [stated] reasons'" for terminating the plaintiff are not true. The plaintiff does not have to `prove' that the employer's stated reason is not true unless the defendant's evidence is sufficiently certain, without more evidence from the plaintiff, to support a directed verdict. If the plaintiff's prima facie case is strong, and the defendant's evidence of an asserted reason is weak or equivocal, the jury might simply disbelieve the defendant.
". . . .
 ". . . If we were to say that, as a matter of law, the reason given by [the employer] is a conclusively legitimate reason, the beneficent purpose of § [25]-5-11.1 would be significantly undermined. An employer could almost always say either `we hired someone to take your place,' or `we no longer have enough business to continue your employment.' Thus, we think a jury question is presented as to whether [the employer's] asserted reason is a legitimate one or only a pretext."
599 So.2d at 1122-23 (citations omitted).
If the burden shifts back to the employee, the courts have held that the employee can demonstrate in several ways that the employer's asserted reason was pretextual. In Culbreth, the supreme court held that the employer's failure to immediately give the alleged reason for termination was sufficient circumstantial evidence from which a jury could infer that the employer fabricated the asserted reason. In S D *Page 1115 Griner, Inc. v. Colwell, 671 So.2d 690 (Ala.Civ.App. 1995), the employer asserted that it had made a business decision to reduce the number of employees. The employee presented rebuttal evidence indicating that the employer had maintained the same number of employees after she had been injured and that the company had placed a "Help wanted" sign in the window instead of rehiring the employee. The employee also presented evidence indicating that the employer in Griner was upset that he had had to pay workers' compensation benefits.
In Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala. 1996), the supreme court held that the employee could show that the employer's asserted reason was pretextual, based on discrepancies between the deposition testimony and the trial testimony. The employee in Continental Eagle Corp. v. Mokrzycki,611 So.2d 313 (Ala. 1992), presented rebuttal evidence indicating that the employer had terminated other employees after they had received workers' compensation benefits.
In Montgomery Coca-Cola Bottling Co., Ltd. v. Golson,725 So.2d 996 (Ala.Civ.App. 1998), the employer's asserted reasons for terminating the employee were inferior work and disregard for a supervisor's instructions. The employee presented rebuttal evidence indicating that before his injury he had had a good relationship with his supervisor, as well as with his co-employees. However, evidence indicated that after the employee had returned to work, the employer assigned duties to him that exceeded his work restrictions; harassed him; and intimidated him so as to force him to quit. We held that the employee had presented evidence from which a jury could infer that the reasons asserted by the employer were pretextual.
Suffice it to say that, after reviewing the evidence in a light most favorable to Wallace, as we are required to do, we conclude that Wallace presented substantial evidence to allow the case to be submitted to the jury. Wallace presented evidence indicating that Waldrip did not immediately state what it now claims were its reasons for termination. Wallace presented evidence indicating that Waldrip hired another mechanic, even though it said it had dismissed him because of a lack of work. Other testimony indicated that Hutchinson had been upset at having to pay Wallace workers' compensation benefits. Wallace showed discrepancies in the deposition testimony and the trial testimony with regard to Waldrip's asserted reason that Wallace had performed his work in an unsafe manner. Also, there was testimony that another employee had been terminated after filing a workers' compensation claim. With regard to Waldrip's assertion that Wallace was fired because of unauthorized overtime, Wallace presented evidence indicating that his supervisor had known of the overtime and had asked Wallace to complete the work.
Waldrip argues that the trial court erred in not reflecting in the record its reasons for not ruling on Waldrip's motion to alter, amend, or vacate the judgment. In its motion, Waldrip did not point to any evidence to indicate why it thought the verdict was excessive, nor did it request a hearing on the punitive-damages issue. Waldrip failed to argue what part of the constitution (or which constitution, for that matter) was violated by the verdict. Waldrip's allegations alone are not specific enough to require a hearing on its posttrial motion. Hill v.Jackson, 669 So.2d 921 (Ala.Civ.App. 1995), citing Fuller v.Preferred Risk Life Ins. Co., 577 So.2d 878 (Ala. 1991). InHill, the defendant's allegation that the jury's verdict was excessive and a result of bias, passion, prejudice, or other improper motive was not specific enough to require a hearing underHammond.
In Fuller, 577 So.2d at 885, our supreme court stated:
 "[T]he trial judge failed to make findings required by Hammond v. City of Gadsden, supra, and Green Oil Co. v. Hornsby, *Page 1116 
 [539 So.2d 218 (Ala. 1989)]. Does this require a remand as argued by [the defendant]? We hold that it does not in the posture of this case. When the jury returned its verdict, [the defendant] filed its motion for a new trial, a judgment notwithstanding the verdict, or a remittitur. [The defendant] argued only that, because the verdict exceeded the amount claimed in the complaint, it was due to be reduced. It did not offer any evidence in support of its contention that the verdict was excessive, and instead argued that it was entitled to a reduction of the verdict as a matter of law."
(Emphasis added.) Further, in King Motor Co. v. Wilson,612 So.2d 1153 (Ala. 1992), our supreme court held that where the defendant did not request, and the trial court did not conduct, a hearing pursuant to Hammond on the issue of excessiveness of the punitive-damages award, the case need not be remanded for aHammond hearing. As the King Motor Co. court noted, § 6-11-23(b) specifically requires that the trial court, upon the motion of anyparty, conduct a hearing or receive additional evidence concerning a jury verdict for punitive damages. In Oliver v. Towns,738 So.2d 798, 804 (Ala. 1999), our supreme court again stated the principle that only upon a timely motion must the trial court, under § 6-11-23(b), hold a hearing on the issue of excessive damages. The court in Oliver noted that in her motion the defendant had specifically requested a hearing on the damages award.
Waldrip failed to properly request a hearing on the issue of punitive damages. The trial court did not err in not holding a hearing, when none was requested. Waldrip's final argument regarding the excessiveness of the punitive-damages award is, therefore, pretermitted because appellate courts generally do not address issues not decided by the trial court.
Based on the foregoing, we affirm the judgment of the trial court.
AFFIRMED.
Robertson, P.J., and Monroe and Crawley, JJ., concur.
Thompson, J., concurs in the result.
[1] Waldrip's company policy states that if an employee is injured on the job, "the employee is required to notify the company immediately and provide the necessary information for filing an accident report within twenty four hours." Waldrip contends in its brief that its reason for firing Wallace was because Wallace failed to comply with this policy. However, no witness for Waldrip testified that Wallace had been fired for this reason and Waldrip presented no evidence to support this contention. Moreover, the record indicates that Wallace did provide the general manager with the "necessary information for filing an accident report" within 24 hours of the accident.
[2] That October 1, 1995, amendment to Rule 50 changed the terminology relating to what had been known as a "motion for a directed verdict" and a "motion for a judgment notwithstanding the verdict."