963 So.2d 136 (2007)
Larry McIVER
v.
BONDY'S FORD, INC.
2050317.
Court of Civil Appeals of Alabama.
March 9, 2007.
*138 Charles D. Decker, Dothan, for appellant.
William L. Lee IV and William L. Nichols of Lee & McInish, P.C., Dothan, for appellee.
THOMAS, Judge.
In June 2000, Larry McIver purchased a 2001 Ford Sport Trac automobile from Bondy's Ford, Inc., for $26,480.75. The sale included a $14,000 trade-in allowance for McIver's 1996 Ford Explorer automobile. Several weeks after the sale, Bondy's discovered that the Explorer had water damage, a fact of which it had been unaware at the time of the sale. In December 2000, Bondy's sued McIver, alleging breach of contract, conversion, negligence, wantonness and fraud. McIver answered and counterclaimed, alleging breach of contract and a violation of the *139 Alabama Litigation Accountability Act, § 12-19-270 et seq., Ala.Code 1975. After a bench trial, the trial court entered a judgment in favor of Bondy's on its fraud claim and on McIver's counterclaims, assessing compensatory damages in the amount of $12,699.18 and punitive damages in the amount of $25,000[1].
McIver filed a postjudgment motion, which the trial court denied, and McIver timely appealed, raising four issues: that the trial court erred (1) by finding that McIver made a false representation to Bondy's about the condition of the Explorer; (2) by finding that Bondy's had reasonably relied on any representation made by McIver; (3) by awarding punitive damages; and (4) by considering whether the case had been settled before trial.
Bondy's complaint alleged fraudulent misrepresentation and fraudulent suppression.[2] The trial court apparently determined that McIver had committed both misrepresentation and suppression because its judgment states:
"The Court . . . finds that [McIver] intentionally and fraudulently failed to disclose the prior damage to the 1996 Ford Explorer at the time of the trade-in, after specific inquiry by [Bondy's], that the existence of damage or prior damage was a material fact relating to the transaction, that [McIver] intended to deceive [Bondy's] and had knowledge of the misrepresentation, that [McIver] had a duty to disclose the prior damage, that [Bondy's] did rely on the intentional misrepresentation and that [Bondy's] suffered damages as a result of [McIver's] intentional misrepresentations; therefore, an additional award of punitive damages in the amount of $25,000.00 is hereby awarded to [Bondy's]."
(Emphasis added.)
The evidence at trial established that on or about May 2, 2000, McIver, a Florida resident, purchased a 1996 Ford Explorer from John Obert d/b/a Obert Auto Wholesale, in Panama City, Florida, for $9,710. At some point before the transaction was complete, Obert told McIver that the Explorer had had "light water damage," and Obert wrote "Has had light water damage" on the invoice for the purchase of the vehicle. McIver testified that when he inquired about the light water damage, Obert replied that "light water damage" could mean that rain might have come into the vehicle through an open sunroof or window. McIver further testified that Obert also said that if there had been light water damage, it had been properly repaired and there was "nothing wrong" with the Explorer.
McIver had the Explorer inspected before he purchased it. Danny Hewitt, an *140 automobile mechanic in Panama City, testified that he gave the Explorer a thorough inspection and found nothing wrong with it. McIver then went to a local automobile dealership and had the title to the Explorer researched. The dealership reported to McIver that the title was "clean" and that no damage to the vehicle had been reported.
Approximately two months later, McIver visited Bondy's and decided to purchase a 2001 Ford Sport Trac and to trade in the Explorer that he had purchased from Obert. John Vollmuth, the Bondy's salesman who handled McIver's transaction, testified that he asked McIver if there was any damage to the Explorer and that McIver responded that there was none. McIver testified that he did not remember Vollmuth's asking him that question, but he did remember telling Vollmuth that "to the best of his knowledge, there was nothing wrong with the vehicle." On a trade-in description of the Explorer, Vollmuth wrote that the Explorer was "used  no damage." Vollmuth acknowledged that he could not remember the transaction with McIver or recall the specific conversation they had, but he said that he asked everyone who was seeking to trade in a vehicle whether the vehicle had any damage. Vollmuth said that the note he wrote on the trade-in description indicated that he and McIver had such a conversation.
Larry Williams, the used-car manager for Bondy's, stated that he performed an inspection on the Explorer and took it for a test drive before agreeing to accept the vehicle as a trade-in and before negotiating a trade-in allowance of $14,000 to offset the price of the Sport Trac that McIver wished to purchase. Williams testified that, during the inspection, he and Vollmuth asked McIver why there was sand and dampness on the back carpet. McIver answered that his son had taken the Explorer to the beach recently and had used it to haul beach equipment. Williams stated that he asked McIver if there had been any prior damage to the Explorer and that McIver responded in the negative.
On the buyer's order for the transaction between McIver and Bondy's, McIver signed a statement that reads as follows: "To the best of my knowledge, the above described trade-in has never been damaged, wrecked or rebuilt; nor does said trade-in have previous or current rebuilt or salvage title." McIver testified that he asked what the statement on the buyer's order meant and that the Bondy's employee who had assisted him in signing the contracts responded that the statement was asking whether the vehicle had ever been wrecked. McIver claims he responded that, to the best of his knowledge, the Explorer had never been wrecked.
David Marshall, the president of Bondy's, testified that a few weeks after the sale, he heard some of his employees talking about a vehicle that possibly had some water damage, so Bondy's decided to have the Explorer checked out specifically for water damage. The Explorer was sent to Bondy's shop where, Marshall said, the following occurred: "We took the door panels off and the tailgate panel, and found sand in them. . . . I don't know if it was salt water or fresh water. But it was up about two and a-half feet inside the car, what it looked like to us."

Standard of Review
It is well established law in Alabama that, when ore tenus evidence is presented to a trial court sitting without a jury, a presumption of correctness is given to the trial court's judgment based on that evidence. On appeal, that judgment "will not be disturbed . . . unless a consideration of the evidence and all reasonable inferences therefrom reveals that the judgment is plainly and palpably erroneous or manifestly *141 unjust." Arzonico v. Wells, 589 So.2d 152, 153 (Ala.1991). "Even if this court may have decided differently, it is not [this court's] function to reweigh the evidence or to substitute its judgment for that of the trial court. James v. James, 582 So.2d 560 (Ala.Civ.App.1991)." Dees v. Dees, 628 So.2d 945, 947 (Ala.Civ.App. 1993).

I.

Misrepresentation
Four elements must be proven in a misrepresentation action: (1) a false representation; (2) as to a material existing fact; (3) reliance on that representation; and (4) damage resulting from the reliance. Crowne Invs., Inc. v. Bryant, 638 So.2d 873, 876-77 (Ala.1994).
The evidence was undisputed that McIver signed a statement informing Bondy's that, "to the best of [his] knowledge," the Explorer had never been damaged. Focusing on the word "knowledge," McIver maintained at trial and now argues on appeal that the evidence did not support a finding that his statement was false. Specifically, McIver claims that, although he had been informed by Obert that the Explorer had sustained "light water damage," he had no actual knowledge of any damage to the vehicle. Citing McGarry v. Flournoy, 624 So.2d 1359 (Ala.1993), McIver contends that his merely stating "not to my knowledge" in response to a question concerning whether the vehicle had any damage is insufficient to prove that he had actual knowledge of the damage and, therefore, is insufficient to prove that he made a "false representation."
McGarry is distinguishable on its facts. In McGarry, the buyer of a used car brought a fraud action against the seller when the buyer discovered after the sale that the vehicle had previously been wrecked. During negotiations leading up to the sale, the buyer had asked the seller whether the car had ever been wrecked. The seller, who had owned the vehicle less than a week, responded, "Not to my knowledge." 624 So.2d at 1360. The Alabama Supreme Court affirmed a summary judgment for the seller because, in response to the seller's motion for a summary judgment, the buyer had submitted no evidence indicating that the seller had knowledge that the vehicle had been wrecked.
In the present case, there was evidence from which the trial court could reasonably have determined that McIver did have knowledge of the water damage to the Explorer. The sales invoice of McIver's purchase of the Explorer from Obert, the deposition testimony of Obert, and McIver's own testimony established that McIver had been informed when he purchased the Explorer that it had sustained "light water damage."
Moreover, it appears that McIver is confusing the term "actual knowledge," as used in the context of fraud, with the term "personal knowledge." Clearly, Bondy's was not required to prove that McIver had "personal knowledge"in the sense of having seen, with his own eyesof water damage to the vehicle. Instead, it was sufficient for Bondy's to prove that McIver had been informed by his seller (Obert) that the vehicle had sustained water damage and that a document evidencing the sale of the Explorer to McIver stated that the vehicle had sustained water damage. See Roland v. Cooper, 768 So.2d 400, 406 (Ala.Civ.App.2000)(holding that, because the seller of a truck had in its possession a title document indicating an "odometer discrepancy" on the truck, whether the seller's agent made a representation that, to the best of his knowledge, the mileage reflected on the odometer was correcta *142 representation that, if made, could be imputed to the sellercreated a question of fact as to fraudulent-suppression claim against the seller). Compare Locklear Dodge City, Inc. v. Kimbrell, 703 So.2d 303 (Ala.1997)(holding that a seller who responded that, to the best of his knowledge, the vehicle had not been wrecked did not engage in fraudulent suppression when the documents in the seller's possession did not indicate whether the vehicle had been wrecked).
McIver also argues that the evidence did not support the trial court's finding that Bondy's relied on any representation made by McIver regarding the condition of the vehicle. Instead, McIver contends that Bondy's trade-in valuation was based on Bondy's own inspection of the vehicle and its investigation of the vehicle's title history. Bondy's maintains that it relied on both McIver's representation that the vehicle had "no damage" and on its own inspection in order to arrive at a fair trade-in allowance for the Explorer. Larry Williams, Bondy's used-car manager, testified that, if Bondy's had known of the previous water damage to the vehicle, it either would not have taken the vehicle as a trade-in at all or it would have sold the vehicle to a wholesaler for approximately $5,000. Williams stated unequivocally that Bondy's would not have given McIver $14,000 for the trade-in and would not have put a water-damaged vehicle on its lot for resale.
In Torres v. State Farm Fire & Casualty Co., 438 So.2d 757 (Ala.1983), the supreme court set out the guidelines for determining whether a plaintiff has established that he relied on the defendant's misrepresentation:
"Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiff's reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover."
438 So.2d at 758-59.
In support of his lack-of-reliance argument, McIver points to the Alabama Supreme Court's decision in Turner v. Landmark Chevrolet, Inc., 514 So.2d 1337 (Ala. 1987). In Turner, the court held that the buyer of a car could not reasonably rely on the representations of the seller's agent that the car had not been wrecked because the buyer later had the car inspected by a mechanic of her choosing, the buyer learned from the mechanic that the car had been wrecked, and the buyer was advised by the mechanic either not to buy the car or to ascertain the extent of the damage before she did so.
Turner is clearly distinguishable on its facts. Although Bondy's performed an inspection, its inspectionunlike the inspection in Turnerrevealed no evidence of damage. It was weeks after the sale, when Bondy's removed the interior side panels of the vehicle, that evidence of water damage was discovered by Bondy's. David Marshall, Bondy's president, testified that if Bondy's had had any indication that the Explorer might have had water damage, it would have inspected the vehicle "a lot closer." He explained that the normal inspection for purposes of a trade-in appraisal does not include taking out the interior trim.
Whether a plaintiff has reasonably relied on a defendant's misrepresentation *143 is usually a question of fact. Cf. Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala.1997)(stating that "[t]he `reasonable reliance' standard . . . allow[s] the factfinder . . . flexibility in determining the issue of reliance based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties").
The trial court was presented with evidence from which it was authorized to conclude that Bondy's reasonably relied on McIver's representation that the vehicle had no damage. We will not substitute our judgment for that of the trial court on this issue. See C & S Family Credit of Alabama, Inc. v. McNairy, 613 So.2d 1232 (Ala.1992):
"[An appellate court] `"must indulge all reasonable presumptions in favor of the trial court's findings when evidence is [presented] ore tenus, and this [c]ourt will not substitute its judgment for that of the trial court on the effect of conflicting evidence dealing with a pivotal question of fact."'"
613 So.2d at 1233 (quoting Starek v. TKW, Inc., 410 So.2d 35, 38 (Ala.1982), overruled on other grounds, Ex parte Grubbs, 571 So.2d 1119 (Ala.1990)(quoting in turn Howell v. Hallett Manufacturing Co., 278 Ala. 316, 318, 178 So.2d 94, 96 (1965))).

Suppression
The elements of a fraudulent-suppression claim are "`(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury.'" Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C., 932 So.2d 883, 891 (Ala.2005)(quoting Lambert v. Mail Handlers Benefit Plan, 682 So.2d 61, 63 (Ala.1996)).
"An action for suppression will lie only if the defendant actually knows the fact alleged to be suppressed." McGarry v. Flournoy, 624 So.2d at 1362. "As a matter of law, one can only be liable for concealing facts of which one has knowledge." Harrell v. Dodson, 398 So.2d 272, 276 (Ala.1981).
McIver challenges only the "actual knowledge" component of the nondisclosure element of Bondy's fraudulent-suppression claim. As we have previously stated in our discussion of the misrepresentation claim, the trial court was presented with evidence from which it reasonably could have concluded that McIver had actual knowledge that the Explorer had sustained water damage.

II.
McIver contends that the trial court erred in awarding punitive damages because, he says, the evidence of intentional fraud was not clear and convincing. Initially, we note that it is questionable whether McIver adequately preserved this issue for appellate review. His postjudgment motion makes two allegations regarding the punitive-damages award: (1) that "[t]he Court abused its discretion in awarding punitive damages to [Bondy's]," and (2) that "the punitive damages were excessive."
Neither allegation specifically directed the trial court's attention to the claimed insufficiency of the evidence to support the punitive-damages award. Compare Sears, Roebuck & Co. v. Harris, 630 So.2d 1018, 1032 (Ala.1993) (stating that appellants "properly raise[d] the issue of whether the award of punitive damages was supported by clear and convincing evidence[] in their post-judgment motion for J.N.O.V., or, in the alternative, a new trial or remittitur"). Assuming that McIver has properly preserved *144 the issue, however, we will address the merits of this issue.
Section 6-11-20, Ala.Code 1975, sets out the circumstances under which punitive damages may be awarded:
"(a) Punitive damages may not be awarded in any civil action, except civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff. Nothing contained in this article is to be construed as creating any claim for punitive damages which is not now present under the law of the State of Alabama.
"(b) As used in this article, the following definitions shall apply:
"(1) Fraud. An intentional misrepresentation, deceit, or concealment of a material fact the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury.
"(2) Malice. The intentional doing of a wrongful act without just cause or excuse, either:
"a. With an intent to injure the person or property of another person or entity, or
"b. Under such circumstances that the law will imply an evil intent.
"(3) Wantonness. Conduct which is carried on with a reckless or conscious disregard of the rights or safety of others.
"(4) Clear and Convincing Evidence. Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.
"(5) Oppression. Subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights."
(Emphasis added.) A "gross" misrepresentation is one that is inexcusable, flagrant, or shameful. Talent Tree Pers. Servs., Inc. v. Fleenor, 703 So.2d 917, 924 (Ala.1997). In Prudential Ballard Realty Co. v. Weatherly, 792 So.2d 1045 (Ala. 2000), the Alabama Supreme Court explained that
"[t]he terms `malicious' and `oppressive,' . . . and the term `gross,' . . . are subsumed within the definition of fraud in § 6-11-20(b)(1)."
792 So.2d at 1049. The court concluded that,
"in other words, it cannot seriously be argued that an intentional act of fraud committed for the purpose of `depriving a person or entity of property or legal rights or otherwise causing injury,' is not a gross, malicious, or oppressive act, as those terms are defined in § 6-11-20. In short, for purposes of applying § 6-11-20(b)(1), the terms `gross,' `malicious,' and `oppressive' are redundant."
Id.
Section 6-11-21(e), Ala.Code 1975, provides, subject to exceptions that are not applicable here, that
"no defendant shall be liable for any punitive damages unless that defendant *145 has been expressly found by the trier of fact to have engaged in conduct, as defined in Section 6-11-20, warranting punitive damages, and such defendant shall be liable only for punitive damages commensurate with that defendant's own conduct."
(Emphasis added.) The trial court's judgment makes the express findings required by § 6-11-21(e). It states:
"The Court . . . finds that [McIver] intentionally and fraudulently failed to disclose the prior damage to the 1996 Ford Explorer at the time of the trade-in, after specific inquiry by [Bondy's], that the existence of damage or prior damage was a material fact relating to the transaction, that [McIver] intended to deceive [Bondy's] and had knowledge of the misrepresentation, that [McIver] had a duty to disclose the prior damage, that [Bondy's] did rely on the intentional misrepresentation and that [Bondy's] suffered damages as a result of [McIver's] intentional misrepresentations; therefore, an additional award of punitive damages in the amount of $25,000.00 is hereby awarded to [Bondy's]."
(Emphasis added.)
Although the trial court did not expressly state that McIver engaged in fraud that was "gross, oppressive, or malicious," the trial court did expressly find that McIver committed intentional fraud; therefore, punitive damages were warranted. As Weatherly states, "for purposes of applying § 6-11-20(b)(1), the terms `gross,' `malicious,' and `oppressive' are redundant." 792 So.2d at 1049. Therefore, when the trial court expressly found that McIver had committed intentional fraud, it was not necessary to then expressly find that such fraud was "gross, oppressive, or malicious," because such a finding would have been "redundant."
When determining whether the burden of proof was met to award punitive damages, the standard of appellate review is whether there was "evidence of such quality and weight that a [reasonable and fair-minded fact-finder] could find by clear and convincing evidence [the fact sought to be proved]." Ex parte Norwood Hodges Motor Co., 680 So.2d 245, 249 (Ala.1996). Cf. KGS Steel, Inc. v. McInish, [Ms. 2040526, June 30, 2006] ___ So.2d ___, ___ (Ala.Civ.App.2006)(Murdock, J. concurring in the result). See also Green v. Leatherwood, 727 So.2d 92 (Ala.Civ.App. 1998) (holding that because the trial court, sitting without a jury, determined that the plaintiff had proved wantonness by clear and convincing evidence, the trial court was authorized to award punitive damages).
After carefully reviewing the evidence, we hold that the trial court reasonably could have determined that the following facts were shown by clear and convincing evidence: that McIver intentionally failed to disclose the water damage to the vehicle; that, in response to a specific inquiry, McIver knowingly misrepresented that the vehicle had "no damage"; that the existence of the water damage was a material fact, one that McIver had a duty to disclose; that Bondy's relied on McIver's intentional misrepresentation; and that Bondy's suffered damages as a result.[3]See Alfa Mut. Fire *146 Ins. Co. v. Thomas, 738 So.2d 815, 821 (Ala.1999).
McIver also contends that the amount of the punitive-damages award was excessive. He filed a postjudgment motion seeking a new trial or requesting, among other things, that the court alter, amend, or vacate the punitive-damages award, arguing that,
"[t]he punitive damages were excessive. . . . [T]he Court failed to consider the factors for the award of punitive damages as set forth in BMW of North America, Inc. v. Gore[, 517 U.S. 559 (1996) ]; Hammond v. City of Gadsden[, 493 So.2d 1374 (Ala.1986)]; and Green Oil Co. v. Hornsby[, 539 So.2d 218 (Ala. 1989)]. [McIver] specifically requests the Court to make on the record findings as to the reasons for awarding punitive damages in this case."
On appeal, McIver argues that the trial court erred by denying his postjudgment motion without conducting a hearing and without reviewing the Hammond and Green Oil factors. Those issues, however, have not been preserved for appellate review because McIver "did [not] request a hearing on the punitive-damages issue," Waldrip Wrecker Serv., Inc. v. Wallace, 758 So.2d 1110, 1115 (Ala.Civ.App.1999), and "did not point to any evidence to indicate why [he] thought the judgment was excessive," id. McIver has established no error with respect to the punitive-damages award.

III.
In a prior appeal, this court reversed the trial court's order granting Bondy's motion to enforce what Bondy's said and the trial court agreed, was a binding settlement agreement between the parties. See McIver v. Bondy's Ford, Inc., 916 So.2d 616 (Ala.Civ.App.2005) ("McIver I") (holding that the requirements of § 34-3-21, Ala. Code 1975, had not been satisfied). McIver asserts that the trial court erred by considering this previous alleged "settlement."
The Alabama Rules of Evidence state that "[e]vidence of conduct or statements made in compromise negotiations is . . . not admissible." Ala. R. Evid. 408. "The Alabama law regarding the admissibility of settlement communications between parties is well established. . . . [O]ffers of compromise by one party to another in a civil action, whether before or after the litigation is begun, is inadmissible. Alabama courts also recognize that conversations in connection with settlement negotiations are inadmissible." Super Valu Stores, Inc. v. Peterson, 506 So.2d 317, 321 (Ala.1987)(internal citation omitted).
*147 During the trial, the following colloquy between the court and counsel for the parties occurred:
"THE COURT: Let me see, now, this is a case that went up; is that correct?
"MR. LEE [Counsel for Bondy's]: Yes, sir.
"MR. DECKER [Counsel for McIver]: Yes, sir. It has already been reversed once.
"THE COURT: And it was settled; is that right?
"MR. DECKER: Mr. Lee says it was settled. There is nothing other than Mr. Lee's statement that it was settled.
"MR. LEE: It was represented to the Court by [McIver's] previous counsel
"THE COURT: Well, I think folks came in my office and talked about it. I was under the impression it was settled.
"MR. LEE: It was stated to you by myself, as well as Mr. Yarbrough [McIver's former counsel] that it was settled. I thereafter wrote Mr. Yarbrough a letter immediately upon leaving your office. It was not put on the record, Your Honor, but you were advised by an officer of the Court on each side of the case that the case had been settled.
"MR. DECKER: Well, since Mr. Yarbrough is not here, I cannot speak for him.
"THE COURT: I understand that.
"MR. DECKER: But that is not what the . . . Alabama Court of [Civil] Appeals found.
"THE COURT: Well, the only thing they found was that [the settlement] wasn't enforceable. They didn't find whether or not, in fact, there was an agreement. Okay. Anything else, gentlemen?
"[Mr. Lee called the next witness]"
McIver's counsel did not object to any part of the foregoing exchange between the court and counsel. In his postjudgment motion, McIver complained that
"the Court acted improperly in considering the fact that this case was previously settled. The Court during the trial made reference to this alleged settlement. The case had previously been reversed based on the failure of [Bondy's] to document the alleged settlement. The Alabama Court of [Civil] Appeals agreed that this case had not been settled as alleged by [Bondy's]. It appears from the Court's ruling that McIver was punished for successfully appealing the Court's prior judgment which was not substantiated by the record."
McIver did not request a hearing on his motion. On appeal, he asserts that the trial court ignored the evidence and sought to enforce the terms of the alleged settlement agreement.
In support of his argument that the trial court improperly considered the previous alleged settlement between the parties, McIver cites Kaufman v. Kaufman, 934 So.2d 1073 (Ala.Civ.App.2005), in which this court held that the same trial judge had improperly considered the settlement negotiations of the parties to a divorce. In Kaufman, the judge made the following statements with regard to the settlement negotiations between the parties:
"`[T]he fact of the matter is if you want to know the truth, I was there when the attorneys were trying to settle this case. And you know I was there, Jerry. Of course, I did not participate in the settlement, but I stuck my head in the room enough to know what was going on. And as I understand, the offer that was made to [the wife] was very reasonable, and she turned it down. This is the way I look at things sometimes. Okay. . . . '"
*148 934 So.2d at 1079. McIver maintains that the judgment in the present case is "along similar lines as the [earlier] settlement [offer] proposed by [Bondy's]." According to the record, the proposed settlement was that McIver pay Bondy's $15,000.[4] However, the judgment in favor of Bondy's in the present case assessed compensatory damages in the amount of $12,699.18.
"This court is bound by the record in all cases." Bowman v. Integrity Credit Corp., 507 So.2d 104, 106 (Ala.Civ.App.1987)(quoted in McIver I, 916 So.2d at 622). In contrast to Kaufman, we cannot infer from the record in the present case that the trial judge thought the previous settlement offer between these parties was "reasonable" or deduce that the judge was considering the settlement negotiations in any way. From all that appears, the judge was merely trying to recall the procedural history of the case and to restate the decision of the appellate court that reversed his judgment. To conclude otherwise would be pure speculation.
The judgment of the Houston Circuit Court is affirmed.
AFFIRMED.
MOORE, J., concurs.
THOMPSON, P.J., concurs as to Parts I and III and concurs in the result as to Part II, with writing, which BRYAN, J., joins.
PITTMAN, J., concurs in the result, without writing.
THOMPSON, Presiding Judge, concurring as to Parts I and III, and concurring in the result as to Part II.
I concur with the result reached by the main opinion as to Part II. I write specially to discuss in more detail two legal questions surrounding the punitive-damages award: first, what standard of appellate review this court should apply given the procedural circumstances of this case; and, second, whether the Alabama Supreme Court's decision in Prudential Ballard Realty Co. v. Weatherly, 792 So.2d 1045 (Ala.2000), has diminished the heightened burden that our legislature and judiciary place on plaintiffs seeking punitive damages for fraud-based claims.
Regarding the standard of appellate review, I question the main opinion's application of a "reasonable fact-finder" standard to this court's review of the punitive-damages award. The case from which the main opinion draws this standard is inapposite to the procedural circumstances of this case; Ex parte Norwood Hodges Motor Co. established the standard to be used by trial courts at the summary-judgment or judgment-as-a-matter-of-law stage in "determining whether to submit an issue of punitive damages to the jury." 680 So.2d 245, 248 (Ala.1996). I do not believe that the standard stated in Ex parte Norwood Hodges Motor Co. is one of appellate review or that it applies after the issue has been submitted to the fact-finder and punitive damages have been awarded. Additionally, this court's opinion in Green v. Leatherwood appears to apply an ore tenus, not a reasonable fact-finder, standard of appellate review to the trial court's award of punitive damages on a wantonness claim. 727 So.2d 92, 93-94 (Ala.Civ. App.1998).
Although the standard of appellate review to determine the excessiveness and constitutionality of a punitive-damages award has been firmly established, see *149 § 6-11-24, Ala.Code 1975; Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 441-42, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001); Horton Homes, Inc. v. Brooks, 832 So.2d 44, 57 (Ala.2001); and Acceptance Ins. Co. v. Brown, 832 So.2d 1, 24 (Ala.2001), I have found no clear statement of the standard of appellate review to be applied in circumstances such as those presented here, where the appellant challenges the trial court's award of punitive damages, not based on excessiveness or unconstitutionality, but based on a lack of clear and convincing evidence to support the award. Given this lack of guidance, I invite our supreme court to define the proper standard of appellate review to be applied in this procedural circumstance.
Regarding the evidentiary burden placed on plaintiffs seeking punitive damages for fraud-based claims, I concur in the result reached by the main opinion because this court is bound by the precedent of the Alabama Supreme Court. I write to identify an apparent incongruity in the governing law. The Alabama Code and precedent from the United States Supreme Court impose a heightened burden on such claims, requiring plaintiffs to prove more than the simple elements of fraud by substantial evidence. Alabama Code 1975, § 6-11-20(a), requires proof "by clear and convincing evidence that the defendant consciously or deliberately engaged in . . . fraud" as defined by that section. (Emphasis supplied.) Therefore, although a plaintiff may present substantial evidence of fraud, even intentional fraud, such evidence is insufficient to support a punitive-damages award unless it is also "clear and convincing."
The United States Supreme Court's decision in BMW of North America, Inc. v. Gore, 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), demonstrates that a punitive-damages award requires more than substantial evidence of fraud. The Court established three "guideposts" to determine the excessiveness of a punitive-damages award; regarding the first "guidepost," the reprehensibility of the defendant's conduct, the Court explained:
"That conduct is sufficiently reprehensible to give rise to tort liability, and even a modest award of exemplary damages does not establish the high degree of culpability that warrants a substantial punitive damages award."
Id. at 580, 116 S.Ct. 1589. In other words, evidence sufficient to sustain a finding for the plaintiff on his fraud claim is not, without something more, sufficient to sustain a punitive-damages award.
Additionally, for purposes of determining punitive damages, § 6-11-20, Ala.Code 1975, defines fraud to include more than the elements of simple fraud. That section requires clear and convincing evidence that the defendant "consciously or deliberately" engaged in fraud that was "gross, oppressive, or malicious." Compare § 6-11-20(b)(1) with S.B. v. Saint James School, 959 So.2d 72 (Ala.2006). However, as the main opinion discusses, the Alabama Supreme Court in Prudential Ballard Realty Co. v. Weatherly has stated that "for purposes of applying § 6-11-20(b)(1), the terms `gross,' `malicious,' and `oppressive' are redundant" and are "subsumed within the definition of fraud." 792 So.2d at 1049. As the holding in this case demonstrates, despite the statutory language and the heightened burden, under Weatherly punitive damages may be awarded simply upon a finding of intentional fraud for the purpose of causing some injury. Accordingly, Weatherly diminishes the evidentiary burden that has been heightened by statute and by judicial precedent. See Weatherly, 792 So.2d at 1057-58 (Hooper, C.J., dissenting); see also Hunt Petroleum Corp. v. State, 901 So.2d 1, 17-18 *150 (Ala.2004)(Houston, J., concurring specially)("It is important to note that the statute requires the intentional misrepresentation or deceit to be `gross, oppressive, or malicious,' which heightens the burden of proof necessary to impose punitive damages" (footnote omitted)).
Weatherly, therefore, seemingly conflicts with the express language of § 6-11-20 to the extent that it disregards as "redundant" language that the Alabama Supreme Court has cited and followed with approval. See, e.g., Wholesale Motors, Inc. v. Williams, 814 So.2d 227, 230 (Ala.2001); Cavalier Mfg., Inc. v. Jackson, 823 So.2d 1237, 1248 (Ala.2001), overruled on other grounds, Ex parte Thicklin, 824 So.2d 723 (Ala.2002). I therefore invite the Alabama Supreme Court to clarify the proper application of § 6-11-20, Ala.Code 1975, and the heightened evidentiary burden placed on plaintiffs seeking punitive damages for fraud-based claims, in light of its decision in Prudential Ballard Realty Co. v. Weatherly, supra.
BRYAN, J., concurs.
NOTES
[1] Bondy's voluntarily dismissed its conversion claim. The trial court's order, which states that "[t]his matter comes before the Court by Plaintiff's Complaint, Defendant's Counterclaim, the Amendments thereto, as well as the Answers filed by the parties," explicitly adjudicated Bondy's fraud claims and McIver counterclaims. It is apparent from the trial court's order that Bondy's breach-of-contract, negligence, and wantonness claims were implicitly denied. See Coosa Valley Youth Servs. Corp. v. Etowah County, 460 So.2d 1232 (Ala. 1984), and Hingle v. Gann, 368 So.2d 22 (Ala.1979).
[2] Section 6-5-101, Ala.Code 1975, provides:

"Misrepresentation of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
Section 6-5-102, Ala.Code 1975, provides:
"Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
[3] This court is bound by precedent to review the propriety of an award of punitive damages under the reasonable fact-finder standard. However, we urge the Alabama Supreme Court to revisit or clarify this issue in light of Justice Houston's special concurrence in Hunt Petroleum Corp. v. State, 901 So.2d 1, 17-18 (Ala.2004)(Houston, J., concurring specially):

"It is important to note that [§ 6-11-20(b)(1)] requires the intentional misrepresentation or deceit to be `gross, oppressive, or malicious,' which heightens the burden of proof necessary to impose punitive damages. Furthermore, `clear and convincing' is defined as:
"`Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.'
"Ala.Code 1975, § 6-11-20(b)(4) (emphasis added). The phrase `when weighed against evidence in opposition' is very important. Unlike the typical review of a judgment based on a jury verdict where we must, as the jury may, disregard evidence submitted by the defendant when that evidence is disputed, when evaluating the propriety of punitive damages under Ala.Code 1975, § 6-11-20, we are required to weigh the conflicting evidence."
(Footnote omitted.)
[4] As previously mentioned, the alleged settlement was originally ordered to be enforced by the trial court; McIver, appealed and the alleged settlement agreement was held to be unenforceable by this court in McIver I.